UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOSE MENDEZ                                          CIVIL ACTION

VERSUS                                              NO. 13-6756

JEFFERSON PARISH CORRECTIONAL                        SECTION "I" (2)
CENTER ET AL.

## REPORT AND RECOMMENDATION

Plaintiff Jose Mendez is a prisoner currently incarcerated in the Avoyelles Correctional Center in Cottonport, Louisiana. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against the Jefferson Parish Correctional Center ("JPCC"), "Doctor Green" of the JPCC "medical staff" and Jefferson Parish Sheriff Newell Normand, whom he originally identified as "John Doe." Record Doc. No. 1 (Complaint at ¶ III(B) and IV. Mendez alleges that while incarcerated in JPCC in Gretna, Louisiana, he received constitutionally inadequate medical care. He seeks damages in the amount of $300,000. Record Doc. No. 1 (Complaint at ¶ IV and V).

On March 27 and 31, 2014, I attempted to conduct a telephone conference in this matter for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny. However, the interpreter provided by plaintiff was not competent, so that no testimony was obtained. See 5 Guide to Judiciary Policy, Ch. 2, § 260 (Administrative Office of the United States Courts, J-Net, Mar. 31, 2014) (a pro se

litigant in a civil case is <u>not</u> entitled to appointment of an interpreter paid for by public funds, but instead must pay himself for any interpreter needs).  Upon review of the record as a whole, including plaintiff's multiple written submissions, I have determined that the existing record is sufficient to fulfill the requirements of 28 U.S.C. § 1915A, without the need for further written or oral explanation of plaintiff's claims.

## THE RECORD

In his original complaint, Mendez alleged that, despite numerous requests,  Dr. Green "fail[ed] to reorder or prescribe [Mendez] more medication for his illness. . . ." Record Doc. No. 1 (Complaint at ¶ IV).  He stated that he had been diagnosed with  a cell infection for which Dr. Green had prescribed antibiotics, but the infection was not cured "because the doctor fail[ed] to make follow-up and the warden fail[ed] to look into the matter to see if plaintiff was properly diagnose[d]."  <u>Id.</u>  Plaintiff alleged that as a result of this inadequate care he is "confined to a wheelchair unable to walk."  <u>Id.</u>

Mendez attached to his original complaint various documents, including his written requests for medical treatment, grievances concerning it and jail officials' written responses to his grievances.  Record Doc. No. 1 at pp. 6-11.  Those materials reflect that Mendez complained (1) on December 10, 2012, about his left shoulder, prostate and "left knee . . . swelling so bad that I cannot walk," for which he had been "on antibiotics for four months," but the pain and swelling had not stopped; and (2) on January 13, 2012,

-2-

of "infection and swelling in my legs and pain," for which he received a response stating that "you were seen for this 3 weeks ago and are scheduled to be seen again in near future." Id. Mendez alleged lack of proper care because "Doctor Green thinks I will be deported back to Cuba because I have a detainer on me." Id. Jail officials' written response dated December 17, 2012, which Mendez alleged he received on January 4, 2013, stated: "You have been assessed and treated several times," both in JPCC and at University Hospital, for what "has been diagnosed as arthritis" that was being addressed with "pain management and . . . [a] recommendation to exercise." The official response to Mendez's related grievance was that he had been taken to the urology clinic at the LSU Interim Hospital about his prostate; that his leg had been treated for cellulitis;[1] that the pain in his shoulder and knee, which was x-rayed, had been diagnosed as arthritis; that his diabetes was being addressed with insulin; and that he was being given "ultram[2] twice daily for pain management." Id.

In response to my orders, Record Doc. Nos. 5 and 9, Mendez submitted a written statement of facts expanding upon his claims, which I have considered an amendment and supplementation of his complaint. In that submission, Mendez identified the persons

---

[1]Cellulitis is a spreading bacterial infection of the skin and tissues beneath the skin and is treated by oral or intravenous antibiotics. http://www.medicinenet.com/.

[2]Ultram is the brand name for tramadol, a synthetic analgesic or pain reliever used for management of moderate to moderately severe pain. http://www.medicinenet.com/.

who had allegedly violated his constitutional rights as "Dr. Green," later identified in the medical records as Dr. Stacey Greene; JPCC medical director Nurse Jean Llovet; and "Nurse Anna," along with Sheriff Normand.  Record Doc. No. 12 at p. 1.  Mendez stated that he is currently serving a sentence of 25 years in prison after having been convicted of an unspecified offense on March 13, 2013.

In his written statement of facts, Mendez asserted that he "would testify to the negligent handling of medical concerns by the [JPCC] facility after numerous complaints. JPCC Medical staff did not administer medications as prescribed by University Hospital and . . . was treating the condition as arthritis when the problem was diagnosed as cellulitis in right leg.  The condition worsened to both knees, which were constantly swollen, and legs were not usable for daily movement or normal function. JPCC was negligent with medical care when visits to University Hospital went beyond two months for follow-ups.  Further, because of diabetes and possibility of limb loss from infections, JPCC failed to administer antibiotics timely and not on a regular basis as ordered by [University] Hospital. Due to JPCC failing to follow Hospital orders and follow up appointments, the condition progressed to the point of plaintiff being confined to a wheelchair with no mobility with his legs." Id. at pp. 1-2.

In response to my order, Record Doc. No. 6, defendants provided me with Mendez's verified medical records for the time of his incarceration in JPCC.  Record

-4-

Doc. No. 19.  The medical records establish that Mendez complained of shoulder and leg

pain, diabetes and poor circulation upon his incarceration in JPCC in December 2011.

Beginning in January and continuing through July 2012, Mendez was seen on numerous

occasions by JPCC medical personnel for the same complaints. "Medication

Administration" records and "Providers Notes" state that he was given a wide array of

medications, including Motrin, Cipro,[3] Bactrim,[4] ultram, "regular doses of naproxen[5] and

percogesic,"[6] an analgesic balm, clotrimazole cream[7] and diflucan.[8]

The medical records indicate that on July 26, 2012, Mendez was transported from

JPCC to the University Hospital emergency room, where he was examined for right leg

redness, swelling and pain.  An ultrasound of the leg was conducted, and it was negative

---

[3]Cipro is the brand name for ciprofloxacin, an antibiotic that is used to treat bacterial infections of the skin, lungs, airways, bones, and joints.  http://www.medicinenet.com/.

[4]Bactrim is a combination of two synthetic antibiotics, sulfamethoxazole and trimethoprim, used to infection. http://www.medicinenet.com/.

[5]Naproxen is the generic name for naprosyn or Aleve, used for the treatment of mild to moderate pain, inflammation, and fever.  http://www.medicinenet.com/.

[6]Percogesic is acetaminophen and antihistamine combination used to treat mild to moderate pain (such as headache, backache, aches/pains due to muscle strain, cold, or flu).  http://www.webmd.com/.

[7]Clotrimazole cream is an anti-fungal medication related to diflucan and is used for the treatment of local fungal or yeast infections.  http://www.medicinenet.com/.

[8]Duflican is the brand name for fluconazole, an anti-fungal medication used to treat yeast infections. http://www.medicinenet.com/.

for deep vein thrombosis.[9] Mendez was diagnosed with cellulitis and prescribed antibiotics, Advil, clindamycin HCL,[10] Lotrimin AF,[11] percocet,[12] robaxin[13] and ultram. The medication administration records indicate that he was provided with these prescriptions at JPCC, and when his complaints continued, Dr. Greene ordered that he be assigned to a bottom bunk and provided with a wheelchair for all travel from July 31 to August 14, 2012.

The medical records reflect continuing administration of medication and an x-ray of Mendez's right knee on August 27, 2012, which the x-ray report notes as "abnormal, mild degenerative joint disease, small joint effusion, no fracture." Thereafter, he continued to be seen by JPCC medical personnel, principally nurses, throughout 2012,

---

[9]Deep vein thrombosis is the presence of a blood clot in the deep venous system of the leg. http://www.medicinenet.com/.

[10]Clindamycin HCL ointment contains an antibiotic and benzoyl peroxide used to treat acne and other bacterial infections.  http://www.medicinenet.com/.

[11]This is a brand name for clotrimazole cream. See footnote 8, supra.

[12]Percocet is a brand name for a combination of acetamenophine and oxycodone, a strong narcotic pain-reliever and cough suppressant similar to morphine, codeine, and hydrocodone, and is used to relieve moderately-severe pain.  http://www.medicinenet.com/.

[13]Robaxin is a brand name for methocarbamol, used to treat muscle spasms and pain. http://www.medicinenet.com/.

and he received ultram, doxycycline,[14] rifampin,[15] ibuprofen, cipro, percocet and bactrim, with a continuing diagnosis of chronic cellulitis and monitoring of his diabetes.  He was examined by Dr. Greene on December 21, 2012, and the doctor ordered his right knee and leg x-rayed again. Dr. Greene's "assessment" on that date was "degenerative joint disease of knee/right leg pain. History of right leg cellulitis."  He again prescribed ultram and bactrim.  The radiological report of Global Diagnostic Services, Inc. dated December 31, 2012, concerning the x-ray ordered by Dr. Greene found "no acute abnormality – old healed fracture of the fibula with deformity and multiple gunshot fragments shown in the soft tissue." He was seen again by Dr. Greene on February 4, 2013, at which time the results of his x-ray were discussed, the same diagnosis was made, ultram was ordered to be continued and an x-ray of the left foot was ordered.

The medical records reflect that on February 14, 2013, Mendez reported to a registered nurse at JPCC that "he does not want Dr. Greene to treat him." He was seen several additional times by JPCC medical personnel in the first quarter of 2013 for his prostate, left shoulder and other complaints.  He was transferred to another prison facility shortly thereafter.

---

[14]Doxycycline is a synthetic antibiotic derived from tetracycline and is used to treat infections. http://www.medicinenet.com/.

[15]Rifampin is a generic name for rifamycin, an antibiotic used to prevent and treat tuberculosis and other infections.  http://www.medicinenet.com/.

## ANALYSIS

I.   STANDARDS OF REVIEW

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis.  28 U.S.C. § 1915A(a); Martin v. Scott, 156 F.3d 578, 579-80 (5th Cir. 1998).  Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim.  28 U.S.C. § 1915A(b)(1).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact."  Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In the Section 1915A screening process, the court may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and

reliable.  "The Court should . . . require that the parties properly identify and authenticate documents.  "'Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'"  <u>Gobert v. Caldwell</u>, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting <u>Banuelos v. McFarland</u>, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'"  <u>Davis</u>, 157 F.3d at 1005 (quoting <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997)).  "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not."  <u>Moore</u>, 976 F.2d at 269.  A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint should be dismissed under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1), either as legally frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his various written submissions explaining the factual basis of his claims.  Plaintiff's complaint, as expanded upon by his

supplemental written fact statements, fails to state a cognizable claim of violation of Mendez's constitutional rights, even under the broadest reading.[16]

## II.   MEDICAL CARE

Mendez was a pretrial detainee for part of the time and a convicted prisoner for the remainder of the period about which he complains about his medical care.  He asserts that the medical care he received for his various conditions at JPCC was inadequate because of misdiagnosis, failure to administer proper medications, negligence and failure to "follow up" on his care.

Before the Fifth Circuit's decision in Hare v. City of Corinth, 74 F.3d 633 (5th Cir. 1996), it appeared that prison officials must provide pretrial detainees with reasonable medical care unless the failure to provide it was reasonably related to a legitimate government interest.  Bell v. Wolfish,  441 U.S. 520, 539 (1979); Cupit v. Jones, 835 F.2d 82, 85 (5th Cir. 1987); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992).  The inquiry was "whether the denial of medical care . . . was objectively reasonable in light of the Fourteenth Amendment's guarantee of reasonable medical care and prohibition on punishment of pretrial detainees."  Pfannstiel v. City of Marion, 918 F.2d 1178, 1186

---

[16]The court must "liberally construe briefs of pro se litigants and apply less stringent standards to parties proceeding pro se than to parties represented by counsel," Smith v. Lonestar Constr., Inc., 452 F. App'x 475, 476 (5th Cir. 2011), cert. denied, 132 S. Ct. 1746 (2012) (quotation omitted); Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

(5th Cir. 1990), abrogated on other grounds as recognized in Martin v. Thomas, 973 F.2d

449, 455 (5th Cir. 1992).

> In Hare, however, the Fifth Circuit held:
>
> > (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650. The Fifth Circuit explained that for the Bell "reasonable

relationship" test to be applicable, the pretrial detainee must be able to show that a prison

official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the

existence of an identifiable intended condition or practice" or that the "official's acts or

omissions were sufficiently extended or pervasive, or otherwise typical of extended or

pervasive misconduct by other officials, to prove an intended condition or practice." Id.

at 645.  If the pretrial detainee is unable to prove either, the incident will be considered

to be an episodic act or omission, and the deliberate indifference standard enunciated in

Estelle v. Gamble, 429 U.S. 97, 104 (1976), will apply.  Shepherd v. Dallas County, 591

F.3d 445, 452 (5th Cir. 2009) (citing Bell, 441 U.S. at 539; Scott v. Moore, 114 F.3d 51,

53 (5th Cir. 1997); Hare, 74 F.3d at 649); Tamez v. Manthey, 589 F.3d 764, 769-70 (5th

Cir. 2009) (citing Scott, 114 F.3d at 53; Hare, 74 F.3d at 649).

In <u>Estelle</u>, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors.  Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment. <u>Id.</u> at 105-06; <u>accord</u> <u>Gregg v. Georgia</u>, 428 U.S. 153, 182-83 (1976); <u>Tamez</u>, 589 F.3d at 770; <u>Hare</u>, 74 F.3d at 650. "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it." <u>Farmer v. Brennan</u>, 511 U.S. 825, 847 (1994).  The <u>Farmer</u> definition applies to Eighth Amendment medical claims.  <u>Reeves</u>, 27 F.3d at 176.

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment.  If the court finds that one of the components of the test is not met, it need not address the other component.  <u>Davis</u>, 157 F.3d at 1005.  "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." <u>Farmer</u>, 511 U.S. at 834 (quotation omitted).  Thus, plaintiff must show that defendants "exhibited deliberate indifference to his serious medical needs." <u>Cooper v. Johnson</u>, 353 F. App'x 965, 967 (5th Cir. 2009) (citing <u>Wilson v. Seiter</u>, 501 U.S. 294, 297 (1991));

accord Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993).

Further, plaintiff must establish that the defendant possessed a culpable state of mind. Farmer, 511 U.S. at 838 (citing Wilson, 501 U.S. at 298). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837; accord Tamez, 589 F.3d at 770 (citing Thompson v. Upshur County, 245 F.3d 447, 458-59 (5th Cir. 2001)). "Such a showing requires the inmate to allege that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" Brewster v. Dretke, 587 F.3d 764, 770 (5th Cir. 2009), cert. denied, 130 S. Ct. 3368 (2010) (quoting Domino v. Texas Dep't of Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001)) (emphasis added).

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. Board of the County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 117 S. Ct. 1382, 1391 (1997) . . . . The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

Southard v. Tex. Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (quoting Bd. of County Comm'rs v. Brown, 520 U.S. 397, 410 (1997) (other quotations omitted)) (emphasis added); accord Tamez, 589 F.3d at 770. "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference." Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997).

In the instant case, plaintiff's pleadings, as expanded by his testimony, establish that nothing more than episodic acts or omissions as defined in Hare are at issue. See Tamez, 589 F.3d at 770 (defendants' alleged refusal "to provide [prisoner] with immediate medical treatment qualifies as an 'episodic act or omission'"). Therefore, the "deliberate indifference" standard applies, and Mendez must allege facts sufficient to establish that defendants knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. In this case, plaintiff wholly fails to allege facts sufficient to satisfy any of the essential elements of his claim, including especially the stringent "deliberate indifference" standard.

Initially, it cannot be concluded with certainty that plaintiff's conditions presented serious medical needs that posed a substantial risk of harm during Mendez's incarceration at JPCC. A serious medical need for purposes of constitutional analysis is one which poses a risk of "life-long handicap or permanent loss." See Hill v. Dekalb Reg'l Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994) (citing Monmouth

-14-

County v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) ("Where the delay [in medical care] results in an inmate's suffering 'a life-long handicap or permanent loss, the medical need is serious.'")); Dickson v. Colman, 569 F.2d 1310, 1311 (5th Cir. 1978) (no serious medical need was demonstrated when plaintiff's high blood pressure presented no "true danger" or "serious threat" to his health).

In this case, Mendez alleges that the insufficient medical care he received at JPCC resulted in severe restrictions on his mobility resulting in his confinement to a wheelchair. The medical records do not confirm this statement, instead indicating only a need for a wheelchair for travel, and neither arthritis nor cellulitis generally restrict the patient to a wheelchair. However, Mendez has made those allegations of severe impact on his ability to walk, which must be assumed true for screening purposes.

Even assuming, however, but certainly without concluding, that plaintiff's conditions presented serious medical need for constitutional purposes, Mendez has alleged facts, confirmed by the verified medical records, that negate any inference of deliberate indifference by defendants. His complaint establishes that he received constitutionally adequate medical care while incarcerated in JPCC.

Mendez has alleged and the medical records confirm that while in JPCC, he was seen by a physician and other medical personnel on numerous occasions, transported to a hospital for specialized treatment and regularly and continuously provided with an

-15-

array of medications and x-rays for his various conditions.  See Brightwell v. Lehman, 637 F.3d 187,  194 (3d Cir. 2011) (prison official's actions were not deliberate indifference when inmate "received appropriate accommodations and regular medical screenings"); Radunz v. Muhlhausen, 375 F. App'x 618, 620-21(7th Cir. 2010) (no deliberate indifference when inmate received regular medication); Harris v. Donaldson, 71 F.3d 876, 1995 WL 725438, at *2 (5th Cir. Nov. 3, 1995) (no deliberate indifference when prisoner received medication for diabetes, rendering his Section 1983 medical care claim merely a "quarrel with the quality and quantity of his medical treatment.").

Although Mendez apparently experienced some delay and expressed dissatisfaction with the type and quality of his care, it is clear that he received constitutionally adequate medical attention at JPCC. This record does not support an inference that defendants were deliberately indifferent to plaintiff's serious medical needs in the constitutional sense.

In essence, Mendez has alleged delay in receiving the "follow up" care he desired, and he has expressed dissatisfaction with the overall speed, quality and effectiveness of treatment.  None of these allegations rise to the level of deliberate indifference necessary to establish a constitutional violation cognizable under Section 1983.

> [T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment. A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or

> engaged in any similar conduct that would clearly evince a wanton
> disregard for any serious medical needs. Deliberate indifference is an
> extremely high standard to meet.

Gobert, 463 F.3d at 346 (footnotes, citations and internal quotations omitted) (emphasis

added). No such showing has been made on the current record. The decisions made by

the treating medical providers concerning when and how to render the care that they

gave, including for example providing certain kinds of examinations and diagnoses and

prescribing certain medications in lieu of others, were classic examples of the exercise

of "medical judgment," which, even if incorrect, cannot serve as the basis for a finding

of deliberate indifference in the constitutional sense.

Mere delay in receiving care is not in and of itself a constitutional violation.

Easter v. Powell, 467 F.3d 459, 463 (5th Cir. 2006); Mendoza, 989 F.2d at 195; Wesson

v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990). Regardless of the length of delay,

plaintiff at a minimum must show deliberate indifference to serious medical needs.

Wilson, 501 U.S. at 298. No such showing can be made in this case in light of the

attention Mendez received for his various problems during his incarceration in JPCC.

Contentions like Mendez's that amount to a mere disagreement with the speed,

quality or extent of medical treatment or even negligent misdiagnosis do not give rise to

a Section 1983 claim. "[A]lthough inadequate medical treatment may, at a certain point,

rise to the level of a constitutional violation, malpractice or negligent care does not."

Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does not constitute deliberate indifference, even if treatment was negligently administered); Rowe v. Norris, 198 Fed. Appx. 579, 581 (8th Cir. 2006) (no constitutional violation when inmate disagreed with physician's choice of medication); see also Estelle, 429 U.S. at 107 (The "question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most, it is medical malpractice . . . ."); Corte v. Schaffer, 24 F.3d. 237, 1994 WL 242793, at *1 (5th Cir. 1994) (Contrary to plaintiff's allegation that he had received "no treatment" because he believed he needed a referral to a specialist, he failed to demonstrate deliberate indifference when he was seen by prison medical personnel with results being within a normal range.); Marksberry v. O'Dea, 173 F.3d 855, 1999 WL 98533, at *2 (6th Cir. Jan. 28, 1999) (plaintiff who alleged inadequate treatment for broken hand failed to state constitutional violation, when he was examined by physician and received x-rays and medication); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993) (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991) (plaintiff, who was 18 months post-surgical implantation of hip prosthesis, who

complained of pain in his hip and who was ultimately diagnosed with broken wires in the prosthesis, failed to state a claim for deliberate indifference when he was seen by medical personnel "numerous times for problems relating to his hip."); Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990) (allegations establishing provision of medical treatment found inconsistent with inference of deliberate indifference).

Under these circumstances, plaintiff cannot state a cognizable Section 1983 claim that defendants were deliberately indifferent to his serious medical needs rising to the level of a violation of his constitutional rights.  For all of the foregoing reasons, plaintiff's complaints in this case about his medical care advance a legally frivolous argument and fail to state a claim for relief under Section 1983.

III.   PRISON DEFENDANT

In his complaint, Mendez named the JPCC itself as a defendant.  However, a prison or jail are not entities that can be sued under Section 1983 because they are not juridical entities under state law capable of being sued and/or because they are not "persons" for purposes of suit under Section 1983, as the statute and case law define that term.  Cage v. Kent County Corr. Facility, 113 F.3d 1234, 1997 WL 225647, at *1 (6th Cir. 1997);  Johnson v. LCDC Med. Staff, No. 4:09-cv-13, 2009 WL 1256906, at *2 (E.D. Tenn. Apr. 29, 2009);  Holifield v. Mobile County Sheriff's Dep't, No. 07-0321-CG-C, 2008 WL 2246961, at *5 (S.D. Ala. May 29, 2008); Cullen v. DuPage

County, No. 99C1296, 1999 WL 1212570, *1 (N.D. Ill. Dec. 14, 1999); Whitley v.

Westchester County Corr. Facility Admin., No. 97CIV0420(SS), 1997 WL 659100, at

*6 (S.D.N.Y. Oct. 22, 1997); Sponsler v. Berks County Prison, No. 95-1136, 1995 WL

92370, at *1 (E.D. Pa. 1995); Powell v. Cook County Jail, 814 F. Supp. 757, 758 (N.D.

Ill. 1993).  Thus, Mendez can assert no claim against the prison under Section 1983.

IV.    SHERIFF AS A DEFENDANT

Mendez has named Sheriff Normand as a defendant in this case.  However,

plaintiff makes no claim that Sheriff Normand was personally involved in any of the

alleged acts or omissions upon which his claims are based. "There is no respondeat

superior liability under section 1983." Eason v. Thaler, 73 F.3d 1322, 1327 (5th Cir.

1996); accord Field v. Corrections Corp., 364 F. App'x 927, 2010 WL 517679, at *1 (5th

Cir. 2010); Cox v. Irby, 281 F. App'x 390, 391 (5th Cir. 2008); Kohler v. Englade, 470

F.3d 1104, 1114-15 (5th Cir. 2006).  Thus, this defendant cannot be held liable under

Section 1983 pursuant to a theory of respondeat superior simply because the persons

allegedly responsible for plaintiff's injury, if any, were in his employ or under his

supervision.  Sanders v. English, 950 F.2d 1152, 1160 (5th Cir. 1992); Baskin v. Parker,

602 F.2d 1205, 1208 (5th Cir. 1979); Barksdale v. King, 699 F.2d 744, 746 (5th

Cir. 1983).

To hold this defendant liable, plaintiff must establish either that he was "personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [this defendant] . . . and the alleged constitutional violation." Douthit v. Jones, 641 F.2d 345, 346 (5th Cir. 1981); accord Cox, 281 F. App'x at 391 ; Kohler, 470 F.3d at 1115.  "It is facially evident that this test cannot be met if there is no underlying constitutional violation." Rios v. City of Del Rio, 444 F.3d 417, 425-26 (5th Cir. 2006) (citing Breaux v. City of Garland, 205 F.3d 150, 161 (5th Cir. 2000)).  In the instant action, plaintiff has failed to establish either that this defendant was personally involved in any acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of this defendant and the alleged constitutional violation.

A supervisory official may be held liable for his subordinates' actions only if the official implemented an unconstitutional policy that causally resulted in plaintiff's injury. Monell v. Dep't of Social Servs., 436 U.S. 658, 691-95 (1978); Thompson v. Johnson, 348 F. App'x 919, 921 (5th Cir. 2009) (citing Mouille v. City of Live Oak, 977 F.2d 924, 929 (5th Cir. 1992)); Gates v. Texas Dep't of Protective & Regulatory Servs., 537 F.3d 404, 435 (5th Cir. 2008). Without alleging a particular custom, usage or policy for which the sheriff can be held constitutionally liable, plaintiff fails to state a claim for relief

under Section 1983.  <u>Monell</u>, 436 U.S. at 691-95; <u>Thompson</u>, 348 F. App'x at 921-22;

<u>Mouille</u>, 977 F.2d at 929.

"To hold a supervisory official liable for the acts of a subordinate, Mendez must

show that "(1) the supervisor either failed to supervise or train the subordinate official;

(2) a causal link exists between the failure to train or supervise and the violation of the

plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate

indifference." <u>Smith v. Brenoettsy</u>, 158 F.3d 908, 911-12 (5th Cir.1998). To state a

failure to protect claim under Section 1983, Mendez must show that he is incarcerated

under conditions posing a substantial risk of serious harm and that prison officials were

deliberately indifferent to his need for protection.  <u>Neals v. Norwood</u>, 59 F.3d 530, 533

(5th Cir. 1995).  For an official to act with deliberate indifference for purposes of either

claim, he "must both be aware of facts from which the inference could be drawn that

substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer v.</u>

<u>Brennan</u>, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)." <u>Payne v. Pickett</u>,

246 Fed. Appx. 884, 889-90, 2007 WL 2537839, *5 (5th Cir. 2007).

Under these standards, plaintiff states no cognizable Section 1983 cause of action

against the sheriff, and all claims against him must be dismissed as legally frivolous.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's Section 1983 complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[17]

New Orleans, Louisiana, this  27th     day of May, 2014.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[17]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

-23-